Case is Marrero versus Commissioner Good morning. I apologize for being late. I've never been to Pittsburgh. I was in the wrong building, and as you can see, this has been the worst year of my life. Well, you made it in time for kickoff. You missed the pregame, but that's not as important as being on time for kickoff, so no worries, Ms. Rodriguez. As I said, this is Marrero versus Commissioner, and Mr. Marrero is the appellant. Ms. Rodriguez, are you ready? Yes, Your Honor. I hope you don't mind if I don't stand. That's perfectly fine. That's absolutely your choice. I'm just thinking we ought to have Erica, we'll help you out with the microphone there. Thank you. Thank you, sir. Ms. Rodriguez, do you wish to reserve any time for rebuttal? No, Your Honor, I don't. Very well. You may proceed. The claim that the government concedes has been exhausted is the claim that's most important to me because it affects all the others, and that is that the appellant was deprived of his right to due process when, through ineffective assistance of counsel, the court was allowed to try him. He's incompetent. There's sufficient medical evidence to show that he's brain damaged. He went through horrible abuse growing up. He probably, maybe even at the time of the crime, he had been inhaling gasoline. He's just mentally incompetent, and he has a very low, well, he has an IQ approximately around 60. And although the government represents or argues that there was no way that counsel could have known that he had these mental problems before the trial, before he was tried, during a guilty plea hearing several months before the trial, prior counsel has submitted an affidavit, which is in my submissions to the court, that he had problems communicating with the appellant, and there were just a number of things that should have alerted him to seek evaluation of the defendant's competence. You say a number of things, but other than a non-cooperative and non-communicative client, which is not that unusual, unfortunately, in my experience, what else was there? Well, he had the inability to recall events. He didn't even know the date. And I believe on, he didn't even recognize the consequences of going to trial, and that's according to counsel's affidavit. When was that affidavit first made of record? First made of record in, I believe, his remand motion to the Supreme Court to remand the case. And that seems to present a real procedural problem for you, does it not? Because as I understand the state rules, the Supreme Court was not obliged to accept that, and in fact did not accept that. Is that true? I don't think that it's true as you presented it. I'm not saying anything disparaging, but what they said is that the issue's already litigated. That's what the Supreme Court said. And that was on the basis of having filed a motion to remand. But, so you're arguing that that information, Mr. Lucas's affidavit, was made a part of the state court record? I thought the Supreme Court declined to accept that. Well, it was my understanding, and let me find the page. That the Supreme Court stated that these issues were already exhausted, and that they didn't have to go through them. Now, I'm having trouble locating my page. Regardless of the reason the Supreme Court gave, though, aren't we left with the fact that the Supreme Court declined, in its discretion, to accept the motion for remand? And that, under Rompelia, served as exhaustion. Well, okay. So that's your interpretation of Rompelia. I mean, I know, I looked at Rompelia, and there's a statement that the second motion, in Rompelia, there were two motions to remand. The second motion to remand, they say this issue's been previously litigated in the first motion to remand, and we're not going to consider it in the second. But it's a very, very succinct statement by the Supreme Court. It really is not even referencing the previously litigated prong of the Post-Conviction Relief Act. Well, that very well may be. However, if, in fact, it didn't serve to exhaust the issue of competency, then why, then, would the government concede that that issue has been exhausted? All right, let's try to make sure we're on the same page, because you do have four claims here. Yes. On which the Certificate of Appealability was granted. Yes. As I understand it, you're saying that Claim B, that Marrero was denied his Sixth and Fourteenth Amendment rights because he was tried while incompetent. You're pointing to the fact that the government has conceded that that claim was exhausted. Yes. All right. But the District Court held the other three claims, D, E, and H, were not exhausted. That's true. How was the District Court wrong on those three? Or are you arguing today that you prevail on Claim B alone? I'm arguing not only that I prevail on Claim B, but that Claim B affects the others, because if a person is incompetent, how could he know the consequences of waiving certain rights? In other words, how could he understand his Miranda rights? And how could he understand anything else that he was giving up? Well, that might help you substantively, but that doesn't shed any light on the question of whether those other three claims were exhausted. All right. I can see your point. However, I would think that if they weren't exhausted in these circumstances, when he was tried while incompetent, that it would be a miscarriage of justice, and that the... Well, but that one was exhausted, though. Being tried while incompetent, I'm assuming right now that you're correct on that, that that was exhausted. I have no reason to believe it wasn't. But I'm asking you whether you want to keep fighting on the other three claims or whether we should focus our attention exclusively on Claim B. So I'll ask again. How was the District Court wrong in holding that D, E, and H were not exhausted? I'm saying, all right, perhaps they were correct in holding that they weren't exhausted. But I'm saying that the failure to exhaust should be excused because the competency issue resulted in a miscarriage of justice. Well, let's focus on B for a moment, and we'll put aside for the moment D, E, and H. Okay? So if we're focused on B, and this is apropos of the question from Judge Finasci with regard to what we can consider with regard to the notion of incompetence, right? Now, he alluded to the uncommunicative nature of Mr. Marrero, and you alluded to his inability to remember certain facts, right? But I'd like to focus on what's the totality of matters that we can consider here, okay? Because it seems to me that really Dr. Riley is it. All of the other submissions with regard to his incompetency are matters that we can't have before us. Now, and obviously Dr. Riley concluded that Mr. Marrero was competent, and that was, I believe, at the first PCRA stage. Okay. There are reports from other doctors, however, that indicate or rather show all of the things that would lead an attorney to say, my client's not competent, I need further examination. I think we probably all would agree that if all of the medical evidence here, right, had been garnered prior to the plea, there might be a different result. But that's really the crux of the matter, really, okay? It's what may we consider now? Oh, I'm sorry, Your Honor. It's okay. We've got time. We have Dr. Riley on one side of the equation, and my suggestion to you is my understanding of what we may and may not consider. All of the other evidence, all of the other doctors that you're talking about are on the other side of the equation. We may not consider them because of the stage of the proceedings that those affidavits were obtained. I want you to tell me why that's a wrong analysis. It's wrong because counsel's failure to investigate and develop these claims deprived the client of effective assistance to counsel and due process. It's all, in my opinion, my humble opinion, the fault of prior counsel. Mr. Lucas. Mr. Lucas. And if Mr. Lucas has submitted an affidavit that supports, he lays some blame on himself, right? That's true. But to Judge Greenaway's point, ineffective assistance claims are litigated on post-conviction review in the state court. That needs to be, those issues need to be joined and presented and argued and litigated in the state court. And this seems to be, and I'm inviting you to tell me why I'm wrong, this seems to be one of those cases where there is some evidence that's quite helpful to your client regarding his mental state, his competency, et cetera, that was never presented in the district court. Am I wrong? I'm thinking that it was, I'm thinking that it was presented and I got the record at the, you know, from the district court level. So in my recollection, the magistrate judge or the, you know, the district court judge said that if the defendant would be entitled to relief on any of these claims, that he should get relief altogether. In other words, a PCRA counsel was just as ineffective as Mr. Lucas. And I just, anything that was defaulted as far as I'm concerned should be considered because of a miscarriage of justice. What would be the result here if we were to agree with you, we would grant the petition or send the matter back? I'm trying to figure out, now he'd have to have a competency review or a competency evaluation now to see if he's competent to stand trial now. Well, I, with the reports that I've read, he wouldn't be competent to stand trial now, but the result would be, as I understand it, that his, that the degree of the guilt could be reduced to third degree murder as opposed to first degree homicide. And that would result in a sentence possibly of no more for just that particular offense in Pennsylvania than 20 to 40 years. He's been in 18 years. There was pretty strong evidence against him, though, of guilt. Yes, but even as I know it from reading the law, even if a person is guilty, they're not to be tried while incompetent. Right. So I would think that his degree of guilt should be determined to be less because of all of the egregious errors of prior counsel and because there was no competency hearing. Have you considered a case that's from our court, Taylor v. Horn, which presents a strikingly similar scenario? I did. And I cannot recite to you verbatim the circumstances of that. We're not trying to do the Socratic method. Thank goodness. Well, my question is really this. In light of Taylor, since you have a familiarity with it, how is it, given Taylor, that we could rule in your favor since, you know, that's a situation where the same, essentially, the same three claims that you're raising here with regard to B, right, were presented there in the same procedural posture. And I'm trying to figure out how we could come to a different result. Well, if I might make an analogy, as the law progresses, you learn what is just and what is not just. And just as with Miller, well, how they've determined that people who are convicted of certain crimes when they are under 18 should not be paroled, and certain other things change, just like Atkins came down. All right. So you want us to revisit Taylor v. Horn. Yes. But a panel can't do that. Only the court en banc can do that. All right. So but maybe I don't want to invite more work for the court, but. Yes. I think the court needs more work. If you don't like the result here, you certainly have the privilege, if you wish, to seek re-hearing en banc. But I just thought I'd share that with both counsel, that because frequently lawyers don't appreciate, they ask a panel to overrule a prior precedent of the court. And we're clear that we don't do that absent en banc consideration. So thank you, Ms. Rodriguez. You're welcome. Mr. Sambroke, did I pronounce that correctly? Yes, you are. Thank you. Okay. Thank you very much. Good morning. May it please the court, my name is Robert A. Sambroke, Jr. I'm the first assistant district attorney in Erie County, here on behalf of the appellees. What I thought I would do, listening to the questions and the argument of opposing counsels, talk briefly first about the motion to remand. A little bit about the procedural history, because I think, I don't want any confusion about it, because I think it's important, and a lot does hinge on it in terms of Claim B. The motion to remand was raised by attorneys who at the time did not represent the defendant. They ended up later representing the defendant after PCRA counsel withdrew. But when they filed it, they complied with the appellate rules of procedure in filing an application for permission to file the motion first, which is what they had to do. In our view, when the Supreme Court denied the motion, they weren't denying the motion on the merits, they were denying even given permission to proceed. So were there two motions filed? An application for leave to file a motion to remand and the motion to remand? Yeah, they filed both, the application and the motion. Is there any Pennsylvania appellate law that clearly states what you just suggested to us? That's right in the rules, but the opposing counsel cites Rompilla, and that was what I was going to lead into. Rompilla, she, opposing counsel, claims that's authority for the proposition that once you rule on the motion to remand and assuming it's denied, that it's a denial on the merits. I can see where she can make that argument. To me, the language in Rompilla is ambiguous and vague. I don't think it means, though, what she says it does. In Rompilla, as Judge Manaski pointed out, there were two motions to remand. First was denied, and then they tried to do it again, and then it was denied the second time. And neither time in Rompilla do I think that they reached the merits, they just denied permission to file it in the first place. And if that's the case, then the claims B, D, and H are not procedurally... they're procedurally defaulted, they're not exhausted. Wouldn't you rely on Bonds v. Commonwealth to provide the appropriate retort for Rompilla? I'm sorry, what? You know, that's... the Pennsylvania Supreme Court stated it would refuse to rule substantively on a new PCR-A claims that were raised in a motion for remand. Doesn't that go to the issue? It does, and I apologize, I'm not familiar with that one, but that would seem to be directly on point. But in any case, with regard to the motion to remand, I do believe the district court was correct in their analysis. It wasn't exhausted properly, and therefore it was procedurally defaulted because it's not the established way to get the issue in front of it. Turning then to the merits, the claim that was exhausted and preserved was claim B and the incompetence issue. And what I would like to say to that is... Attorney Lucas was not ineffective for failing to raise it. There were no signs whatsoever that Mr. Marrero was incompetent. Instead, what he was was difficult and uncooperative. He wouldn't talk to Mr. Lucas. Mr. Lucas, and the record is very, very clear, spent a great deal of time with him, trying to get information that would allow him to present a diminished capacity defense, to see what kind of mental health issues were out there. Doesn't the fact that someone doesn't remember their criminal record, isn't that a red flag that we should take cognizance of? Well, I... Let's just make it clear for the record. I'm not talking about forgetting a felony among many. It apparently was he couldn't have a conversation about any of the many entries on his rap sheet. Well, I think it was really more a question of did he really want to talk about it, not did he remember. With all due respect, Judge, I've seen many, many cases in 32 years where people don't want to remember their criminal history and are completely honest with their attorneys when they talk about it. To me, that's not unusual in the sense that it would raise a red flag about your mental health status. All right, but you say that there was no evidence he was incompetent, but his own lawyer, Mr. Lucas, has helped him out in that regard, hasn't he? No. Why not? Well, because that affidavit was submitted way, way after. I don't think you could consider that. All right, we can't consider it. But if we could consider it, it would help Ms. Rodriguez's argument, wouldn't it? Except that Judge Ambrose, in her opinion, hit it right on the head. If you analyze the ineffectiveness under Strickland, it's an objectively reasonable test. And with all due respect to Mr. Lucas, who really is a colleague and a friend and a very good lawyer, that affidavit doesn't hold water when you compare it with his actions and what he did at the trial. What are we to make of Judge Connolly's involvement in the case as it relates to competence? He was involved from the beginning. So does that make a difference? Is this a different case because this one judge got to experience Mr. Marrero on multiple occasions as opposed to a case or a court system where initial appearance is done by one judge, etc.? Well, I think it helps us. Are there any cases that say that? Well, I think the law is clear that their findings of competency are presumed to be correct. And there are cases I cited in my brief and under the standard of review. If you want to look at what he did and what he saw, the first thing was he took the plea initially. And he found that it was voluntary and knowing. And then later Mr. Marrero sends him a letter from jail saying, I want to withdraw my plea. And there's evidence at the PCR hearing, testimony from Lucas, that Lucas tried to talk him out of it because the death penalty would therefore be reinstituted and he ran a pretty grave risk of what happened, him getting the death penalty. But he was allowed to withdraw his plea. And he went to trial and there was a colloquy as to whether or not he would testify. And Judge Colley was in a position to observe him then. The point being that at no time, you know, despite his poor choices, despite whatever mental handicap he was under, at no time was there any indication at all he wasn't able to understand the nature of the proceedings or he wasn't able to assist his attorney, which is what competency is. The fact that he chose not to help his attorney that's unfortunate, but that happens too. And that doesn't make him mentally incompetent to the point where he was denied a fair trial or he shouldn't have been tried. So the record, in our view, is very, very strong and very, very clear that everything was done to show he wasn't incompetent. All the medical evidence that you're talking about occurred after the fact. It was never presented to the lower court. In fact, I think some of them are dated after the verdict was in. So how can anybody even have known about that? Be that as it may, I don't think you can consider it anyway. So it really all goes back to how you're going to look at the motion to remand and then how you're going to view the findings of fact made by the judge in terms of competency and then Lucas's actions, whether they are objectively reasonable under Strickland. And we don't think that the lower court was incorrect in any way. We cite Taylor V. Horn in our brief and it is very, very strong in support of our position. I think what makes this case unusual or maybe a little bit complicated is the fact that it originally was a death penalty case that ended up being sent back because of Atkins. We negotiated it so that he's serving life in prison but he wanted to preserve his guilt phase claims and that's why we're here today. Quite frankly, we don't see anything that was done incorrectly that would warrant a remand for further consideration or even a new trial. And so we would ask you to uphold the decision of the lower court. Thank you, Mr. Samberg. Thank you, Ms. Rodriguez. The case was very well argued. The court will take it under advisement.